Edward Lee CLEMMONS, Movant-
Appellant,

v.

STATE of Missouri, Respondent.

No. 57197.

Supreme Court of Missouri,
Division No. 1.

Oct. 8, 1973.

Daniel J. Matula, R. Bruce Sears, Kansas City, for appellant.

John C. Danforth, Atty. Gen., G. Michael O'Neal, Asst. Atty. Gen., Jefferson City, for respondent.

WELBORN, Commissioner.

Appeal from denial of relief on motion under Rule 27.26, V.A.M.R., to set aside

judgment and sentence to 20 years' imprisonment, entered on jury verdict which found Edward Lee Clemmons guilty of robbery in the first degree with a deadly weapon. (Notice of appeal filed prior to January 1, 1972.)

On February 1, 1968, in a criminal proceeding in the Jackson County Circuit Court, based upon an occurrence at a date not here shown, appellant Clemmons was found not guilty by reason of mental disease or defect and ordered "committed to the Director of the Division of Mental Diseases for custody, care and treatment." Pursuant to the adjudication, Clemmons was hospitalized at State Hospital No. 2 on February 5, 1968. On May 10, 1968, he "eloped" from the hospital. He received psychiatric treatment at a Veterans Administration Hospital from May 15, 1968 to July 9, 1968. On December 16, 1968, he was returned to State Hospital No. 2, from which he took "unauthorized absence" on December 18, 1968.

On January 8, 1969, he was arrested in Kansas City for the offense for which he is now under sentence and which occurred on that date. On February 14, 1969, Mr. Denny of the Legal Aid and Defender's Society as attorney for Clemmons filed a motion for mental examination to determine the defendant's fitness to proceed (§ 552.020, RSMo 1969, V.A.M.S.). A report, dated May 16, 1969, by two physicians at State Hospital No. 1 (Fulton) found that the accused had no mental disease or defect within the meaning of § 552.010, RSMo 1969, V.A.M.S. that he had the capacity to understand and assist in his own defense and that he did know and appreciate the nature and quality and wrongfulness of his conduct.

A second request for examination under § 552.020, supra, resulted in the commitment of Clemmons to the Western Missouri Mental Health Center from which a report of mental examination dated July 22, 1969 was received, which concluded:

"This twenty-one year old Negro, married male, presents himself for a psychiat-

ric examination under Court order. He has been charged with first degree robbery and kidnapping. The evaluation reveals him to be fit to stand trial, with a notation that his reactions, as well as his thought processes, are slowed considerably, which may be due to either malingering or due to an apparently present reactive depression. From the account of the alleged crime and the time preceding and after the exact act, this examiner feels that Mr. Clemmons was responsible for his actions at the time of the alleged crime. At no time prior to or during this offense did he have any strange feelings of a bizarre or abnormal nature which would indicate a thought process deviating from the normal. He was not under the influence of drugs or medications, but acted out of necessity to obtain funds. He was aware that the act was wrong, before the law, however his need to obtain funds outweighed other considerations."

On October 16, 1969, a hearing was held on the issue of the defendant's competency to stand trial, at which the foregoing reports were introduced in evidence and defendant testified. The defendant was represented by Denny at the hearing. At its conclusion, the trial court found the defendant competent to stand trial, specifically noting that the finding "in no way prevents the issue being raised as to a defense on the merits of the case."

In the course of the hearing on October 16, 1969, Clemmons expressed dissatisfaction with Denny's representing him and the trial court undertook to discuss the case with the director of the Legal Aid office in order to obtain assignment of another attorney to the case.

On October 20, 1969, when the case was called for trial, Mr. Bach of the Legal Aid office appeared as attorney for the defendant and stated that he had reviewed the file of the Public Defender's Society and was prepared for trial. A motion to suppress was heard and overruled. A jury was selected on October 20 and the trial began on October 20, resulting in a jury verdict of guilty on October 22.

No evidence was offered on behalf of the defendant. The defense offered to show by the defendant's testimony certain matters relating to the defendant's background. The state's objection to the offer was sustained. The trial court's ruling was the subject of a prior appeal in which the trial court's action was affirmed. State v. Clemmons, 460 S.W.2d 541 (Mo. 1970).

The 27.26 motion stated three grounds for relief. First, that as a matter of law, defendant was not legally capable of having committed the offense because he was still subject to the February 1, 1968 adjudication of mental illness excusing criminal responsibility. Second, his trial attorney failed to make use of the facts surrounding the prior adjudication. Third, his trial attorney was appointed only three days prior to the trial, and he was not permitted to present evidence as to his biographical background.

The matter was presented to the trial court by way of stipulation that defendant was released from the custody of the Division of Mental Diseases on March 3, 1969. Documentary evidence consisting of the February 1, 1968 order, medical reports upon which such order was based, and psychiatric reports of the 1969 examination, was presented. Appellant did not testify. There is reference in the record to the fact that, at the time of the hearing in July, 1971, Mr. Bach was practicing law in California.

On this record, the trial court found against appellant on all grounds of his 27.-26 motion. In this court, the grounds of error asserted are that the trial court should have found denial of effective assistance of counsel because counsel failed to present to the trial court in an appropriate manner the evidence of his prior mental condition. Appellant also renews his attack against the trial court's refusal at the original trial to permit defendant to

testify to his biographical background. The latter issue was fully resolved in the prior opinion, supra, and will receive no further consideration here. Young v. State, 473 S.W.2d 390, 394 [6, 7] (Mo. 1971); Gailes v. State, 454 S.W.2d 561 (Mo.1970); Crawford v. State, 436 S.W.2d 632 (Mo.1969).

On the effective assistance of counsel issue, the trial court found that the record did not show whether Mr. Bach knew about appellant's prior mental history. He stated that it is more probable that Bach did know. The psychiatric report of May 16, 1969, which had been furnished to the Public Defender, refers to the movant's prior hospitalizations and to his having been acquitted of a criminal charge in February, 1968, because of "insanity." As above noted, Mr. Bach informed the court prior to the trial that he had reviewed the Public Defender's file. The court found that, as a matter of trial strategy and in the face of two recent psychiatric reports that appellant was mentally responsible for the offense in question, Mr. Bach proceeded on a plea of not guilty, with defendant denying the offense.

Appellant's brief does not really come to grips with the trial court's findings. The thrust of appellant's contention is that Mr. Bach did not know of the prior mental history and therefore did not properly prepare a defense, or alternatively, that if he did know about the prior history, his failure to bring the matter to the trial court's attention was a dereliction of his duty to represent his client.

If appellant is to rely upon inadequate preparation (see Goodwin v. Swenson, 287 F.Supp. 166 (W.D.Mo.1968)), he had the burden of so showing. Mere failure to use the previous records could well have been, as found by the trial court, a conscious strategy decision. On this record, there has been no showing that the trial court's finding was clearly erroneous.

The situation here is quite different from that presented in Brooks v. Texas, 381 F.2d 619 (5th Cir. 1967), relied upon by appellant. There, counsel, although appointed more than a month before trial, waited until the Friday before the trial began on Monday to interview his client and then learned for the first time of a current mental examination which cast serious doubts upon his client's mental responsibility. Counsel's efforts to subpoena the psychiatrist were unsuccessful and he made no effort to obtain and use the report in the hands of the prosecution. In such circumstances, the court found that the inadequate preparation by trial counsel deprived the defendant of his only possible defense, insanity, and concluded that defendant had not received effective assistance of counsel.

Here, there is no showing that the brief time that Mr. Bach had been in the case before it went to trial had any relation to the use of the defense of insanity. The reports appellant now says he should have relied upon were not current reports. The current reports negated any defense based upon absence of mental responsibility. In Brooks, supra, despite his inadequate preparation, defense counsel sought to present the insanity defense (see Brizendine v. Swenson, 302 F.Supp. 1011 (W.D.Mo. 1969)). Here, the defense was not advanced and the trial court's conclusion that defense counsel's decision was a matter of trial strategy is not clearly erroneous.

Judgment affirmed.

HIGGINS, C., concurs.

PER CURIAM:

The foregoing opinion by WELBORN, C., is adopted as the opinion of the court.

BARDGETT, P. J., and HOLMAN, J., concur.

SEILER, J., concurs in result in separate concurring opinion filed.

SEILER, Judge (concurring in result).

On February 1, 1968, defendant Clemmons was ordered committed to St. Joseph

State Hospital pursuant to Sec. 552.040, RSMo 1959, V.A.M.S., having been acquitted of the crimes of robbery and stealing from the person on a defense of mental disease or defect. The psychiatric report which was the basis of this commitment contained this diagnosis:

"Chronic Schizophrenia Reaction, undifferentiated type, with paranoid features and poor remission.

"The prognosis for Mr. Clemmon's (sic) recovery from his mental illness is rather guarded, in view of the fact that he apparently has been emotionally ill all of his life . . ."

Eleven months later Clemmons was arrested and later found guilty of robbery and kidnapping. A defendant may only be convicted of these crimes if he has sufficient capacity to form the requisite mental intent. Petitioner asserts that as a matter of law he was not capable of committing the crimes of kidnapping and robbery on January 5, 1969, because on that date he was still subject to the commitment order of February 1, 1968.

Under Sec. 552.040, supra, once a defendant is acquitted of a crime on the ground of mental disease or defect, as was defendant, the court is required to order him committed to a state mental hospital. On being committed under this section, a person may not be released until he can establish " . . . that he does not have and in the reasonable future is not likely to have a mental disease or defect rendering him dangerous to the safety of himself or others or unable to conform his conduct to the requirements of law."

On these facts, the state in this case is in the position of asserting conflicting propositions. The state is saying in effect, once you have been acquitted on a plea of mental disease or defect, you are presumed mentally deficient; you are automatically committed to a mental hospital without any determination as to present condition; once committed you have the burden of establishing your sanity before you can be released. Having in essence made these statements to Mr. Clemmons on February 1, 1968, the state, just eleven months later, arrests him and proceeds to convict him of a crime committed while he was still subject to a commitment order; a crime which could only have been committed if the defendant had sufficient mental capacity to form the requisite mental intent.

There is case law in Missouri to the effect that, once a defendant is determined to be chronically insane, a presumption of his continued insanity arises, so that the burden of proving that the offense was committed during a lucid interval shifts to the state. State v. Lowe, 93 Mo. 547, 5 S. W. 889 (1887) ; State v. Hermann, 283 S. W.2d 617 (Mo.1955). For a discussion of the law in this area see, Annot. 27 A.L.R. 2d 121 (1953).

In this case no claim or plea of insanity was made at the January 1969 trial and no evidence was offered. The effect of the prior adjudication of insanity is before us only to the extent that failure of defense counsel to assert this fact constituted ineffective assistance. I doubt if trial counsel was aware of the prior commitment, although he should have learned of it had he made a proper investigation. Even so, in view of the later psychiatric reports indicating absence of mental defect at the time of these offenses, I am inclined to agree with the trial court that counsel's failure to raise this defense was harmless error. The state may not always find itself in such a comfortable position, however. Had there been no evidence of defendant's mental capacity in this case, I would view defense counsel's failure to raise this issue at trial in a very different light.

For this reason I concur in the result of the majority opinion.